**Dated: January 11, 2007**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

| | |
|---|---|
| **SIOUX REDI-MIX, INC. and** | Case No. 03-73857 |
| **SIOUX AGGREGATES, INC.,** | Case No. 03-73858 |
| | Chapter 7 |
| | (Substantively Consolidated under |
| Debtors, | Case No. 03-73857) |

**CAROL WOOD MITCHELL, TRUSTEE,**

Plaintiff,

vs.                                                    Adv. No. 05-7114

**JOEL T. STRINGFELLOW,**

Defendant.

## O R D E R

On the 19th day of October, 2006, the above-referenced adversary proceeding came on for trial. Appearances were entered by Carol Wood Mitchell, Plaintiff, and James Conrady, Attorney for Defendant. After reviewing the evidence and testimony, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core

proceeding.

Plaintiff commenced this adversary proceeding on October 1, 2005, seeking to avoid and recover transfers made by the Debtors to the Defendant both before and after the bankruptcy filing. Plaintiff seeks relief under 11 U.S.C. §§ 544, 547, 548, 549, 550, 502(d) and Oklahoma Fraudulent Transfer laws. The parties stipulated to the following facts, as provided in the Pre-Trial Order entered October 11, 2006:

1. Defendant Joel T. Stringfellow is, and has at all relevant times been, the husband of Terry Stringfellow. Defendant was employed by the Debtors and served in the capacity of general manager for the Debtors from the inception of the Debtor corporations until the conversion to Chapter 7.

2. Terry Stringfellow is the sole owner and president of Debtors Sioux Redi-Mix, Inc. and Sioux Aggregates, Inc.

3. Debtors Sioux Redi-Mix, Inc. and Sioux Aggregates, Inc. filed separate voluntary petitions seeking relief under Chapter 11 of Title 11 of the United States Code on October 1, 2003.

4. By Order dated March 4, 2004, the Bankruptcy Court substantively consolidated the separate Chapter 11 cases of Sioux Redi-Mix, Inc. and Sioux Aggregates, Inc., under Case No. 03-73857.

5. On September 2, 2004, the Bankruptcy Court entered its Order converting the substantively consolidated Chapter 11 cases of the Debtors to a case under Chapter 7 of Title 11 of the United States Code.

6. Plaintiff Carol Wood Mitchell, Trustee is the duly appointed, qualified and acting Chapter 7 Trustee for the Debtors.

7. At the time of the Pre-Petition Transfers, the Defendant had a right to payment on account of an obligation owed to the Defendant by one or more of the Debtors. Defendant was a creditor of the Debtors.

8. The Debtors were insolvent throughout the 90 days preceding the Petition date.

9. Debtor Sioux Redi-Mix, Inc. is an Oklahoma corporation, organized and existing under the laws of the State of Oklahoma.

2

10. Debtor Sioux Aggregates, Inc. is a Texas corporation, organized and existing under the laws of the State of Texas.

11. As of October 1, 2003, there were no perfected security interests recorded against Debtor Sioux Aggregates, Inc.'s accounts, contract rights, general intangibles and accounts receivable.

12. As of October 1, 2003, there were no perfected security interests recorded against Debtor Sioux Redi-Mix, Inc.'s accounts, contract rights, general intangibles and accounts receivable.

13. Defendant took no action to record with public officials any security interest or agreement terms between Defendant and Debtors.

14. No order authorizing any loans or any use of cash collateral was ever entered during the bankruptcy cases.

15. No order authorizing the assumption of any executory contract between the Debtors and the Defendant was ever entered during the bankruptcy cases.

16. No order authorizing any payment to Defendant was ever entered during the bankruptcy cases.

17. Defendant has presented to the Plaintiff Trustee and attached with his Proof of Claim two Operating Agreements, one with each of the Debtors. Copies of the Operating Agreements presented to the Trustee appear as Plaintiff's Exhibit 23; a copy of the Defendant's Proof of Claim appears as Exhibit 10.

18. Since August 15, 2003, Defendant has been the record owner of the real property and improvements described in Exhibit "C" to the First Amended and Restated Complaint filed herein. Said real property and improvements are the Defendant's homestead located in Bryan County, Oklahoma. The deed and mortgage to that home appear as Plaintiff's Exhibit 11.

19. The down payment for the Defendant's home in Bryan County, Oklahoma was paid by Sioux Redi-Mix check number 1241 in the amount of $23,093.64, a copy of which appears as Plaintiff's Exhibit 12.

20. Defendant did not disclose the existence of his First United Bank account number 1985118 to the Bankruptcy Court, the Trustee or creditors of the Debtors. Said account number 1985118 was opened on September 18, 2003, and Defendant is the only authorized signer on the account. The account ownership documentation for said account number 1985118 appear as

3

Plaintiff's Exhibit 16.

21. The opening deposit for account number 1985118 was composed in part of $29,000.00 transferred from Debtor Sioux Redi-Mix, Inc.'s account at First United Bank. The debit documents showing this transfer of $29,000 into account number 1985118 appear as Plaintiff's Exhibit 16.

22. Debtors paid the mortgage payments on a tract of land known as the Sand Plant, located east of Denison, Texas in Grayson County, Texas, which land is titled to Defendant. These monthly payments were $2,631.86 each.

23. The 1996 Ford F-350 was purchased by Sioux Redi-Mix, Inc. from Atoka Wholesale in September of 2003 and was paid for by Sioux Redi-Mix check number 1286 for $7,600. Title should have been put into Sioux Redi-Mix, Inc.'s name, but instead, title was placed in Defendant's name. The title to this F-350 appears as Plaintiff's Exhibit 24 and the payment check appears on the last page of Plaintiff's Exhibit 17.

24. David Shanahan was retained, with Bankruptcy Court approval, as the accountant for the Debtors in possession during the Chapter 11 case. At his Rule 2004 examination conducted by the Trustee, David Shanahan provided the Trustee with a data disk containing QuickBooks accounting data concerning the Debtors.

25. First United Bank produced records concerning the Defendant's account number 1985118 to the Trustee pursuant to subpoenas.

26. At all times from and after October 1, 2003, Defendant had actual notice and actual knowledge that the Debtors had petitioned for bankruptcy relief in this Court.

Plaintiff testified at trial as to the difficulty in contacting the Defendant and his wife during the bankruptcy cases and this adversary proceeding. Plaintiff had many problems obtaining records and inventories as well. Plaintiff also discovered Defendant's private bank account (#1985118) that was opened weeks before the bankruptcy filing. This was not disclosed to the Court, the Trustee or to the creditors of the Debtors.

This Court also heard the testimony of Mr. Darren Barnes, an accountant in Tulsa, Oklahoma, who was retained by the Trustee as accountant for the bankruptcy estates. Mr. Barnes

4

testified as to the transfers made during the pre-petition and post-petition periods.

Mr. Noe Lopez also testified at trial. Mr. Lopez is a home builder in Texas and is a former customer of the Debtors. Mr. Lopez stated that in the fall of 2004 he sent a check to Sioux Redi-Mix, Inc. as payment for concrete. Soon after sending payment, Mr. Lopez was told by an employee of Sioux Redi-Mix that the check had not been received. After contacting his bank to stop payment on the check, Mr. Lopez contacted the Sioux employee and was told to send another check made payable to the Defendant personally.

Debtors' bankruptcy petitions were filed before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), therefore this Court will apply the Bankruptcy Code as it was in effect prior to the BAPCPA.

First, this Court will look at whether the pre-petition payments to Defendant are preferential transfers. Section 547 provides, in pertinent part:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
>     (1) to or for the benefit of a creditor;
>     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>     (3) made while the debtor was insolvent;
>     (4) made -
>         (A) on or within 90 days before the date of the filing of the petition; or
>         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>     (5) that enables such creditor to receive more than such creditor would receive if -
>         (A) the case were a case under chapter 7 of this title;
>         (B) the transfer had not been made; and
>         (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of the Trustee's avoidance power is to insure all creditors receive

equal distribution from assets available. *Gill v. Winn (In re Perma Pac. Properties)*, 983 F.2d 964, 968 (10th Cir. 1992). "It is well established that the fundamental inquiry under § 547(b) is whether the transfer diminished or depleted the debtor's estate." *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1013 (10th Cir. BAP 1998) aff'd 195 F.3d 568 (10th Cir. 1999) (citing *Perma Pac. Properties,* 983 F.2d at 968).

The evidence presented and the parties stipulate that Defendant received from the Debtors the benefit of $23,093.64 as a down payment on a home in August of 2003. Evidence also shows the Debtors made a pre-petition mortgage payment of $2,631.86 on the Denison sand pit for the Defendant. Evidence presented, and the parties stipulate, that the opening deposit for Defendant's account number 1985118 was comprised in part of the $29,000.00 transferred from a Sioux Redi-Mix, Inc. account. The 1996 F-350 was purchased by Sioux Redi-Mix, Inc. in September of 2003 for $7,600.00 and title was placed in Defendant's name. Finally, the evidence reveals that checks from the Debtors' customers totaling $73,663.06 were deposited in Defendant's personal account during the pre-petition period.

The parties stipulate that at the time of the pre-petition transfers, the Defendant had a right to payment on account of an obligation owed to the Defendant by one or more of the Debtors. It is also stipulated that Defendant was a creditor of the Debtors, and the Debtors were insolvent throughout the ninety (90) days preceding the bankruptcy filing. Based on the Plaintiff's testimony, and the evidence before this Court, this Court finds that the pre-petition transfers resulted in a greater distribution to Defendant than he would have received in a Chapter 7 case. The unsecured creditors of the Debtors will likely receive no distribution.

Defendant argues that the transfers are not avoidable because they meet the ordinary course

6

of business exception set forth in § 547(c)(2). Defendant has the burden of proving the exception applies. *Clark v. Balcor Real Estate Fin., Inc. (In re Meredith Hoffman Partners),* 12 F.3d 1549, 1553 (10th Cir. 1993). Section 547(c)(2) provides:

>  (c) The trustee may not avoid under this section a transfer -
>
> \* \* \*
>
> >  (2) to the extent that such transfer was -
> > (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> > (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> > (C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2). The Code does not define "ordinary business terms." *Meredith Hoffman Partners,* 12 F.3d at 1553. "Subsection (B) of this section creates a subjective test, i.e., whether the transfers were ordinary as between the parties, and subsection (C) creates an objective test, i.e., whether the transfers were ordinary in the industry. *Sunset Sales,* 220 B.R. at 1020. Courts, in determining whether payments are ordinary as between the parties in subsection (B), look at the following factors:

>  (1) length of time the parties were engaged in a transaction;
> (2) whether the amount or form of tender differed from past practices;
> (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
> (4) the circumstances under which the payment was made.

*Id.* at 1020-21. "These factors are typically considered by comparing pre-preference period transfers with preference period transfers." *Id.* at 1021 (citations omitted).

None of the pre-petition transfers at issue appear to fall within the ordinary course of business exception. The down payment on Defendant's home does not fall into the exception, nor

7

does the purchase of the vehicle. The deposit of $29,000.00 into Defendant's personal account, as well as the deposits of numerous customer checks, appear to be fraudulent behavior in anticipation of the bankruptcy filing. This is further bolstered by the fact that the Defendant failed to disclose the existence of the personal bank account. Defendant also failed to prove that the transfers were ordinary transactions between the parties, and Defendant also failed to offer any proof that the transfers were ordinary in the industry. This Court finds that the pre-petition transfers totaling $135,988.56 should be avoided and recovered by the Plaintiff.

The Plaintiff also seeks to avoid certain post-petition transfers made to or for the benefit of the Defendant. Under 11 U.S.C. § 549, a trustee may avoid a transfer of estate property that occurs after commencement of the case without court approval. The Defendant has the burden of proving the validity of the transfer. Fed. R. Bankr. P. 6001. The post-petition transfers are as follows: (1) nine mortgage payments to First United Bank in the amount of $773.62 from October, 2003 to September, 2004; (2) eleven payments of $2,631.86 on the Denison sand pit for the Defendant; (3) Defendant took title and possession of three of Debtors' undisclosed and unscheduled vehicles (a 1999 Ford pickup, a 1995 Ford pickup, and a 1979 GMC drilling rig truck) for Defendant's own use and benefit which deprived the estate of the vehicles and their value estimated at $10,801.88; (4) the deposit of customer checks made payable to Debtors into the personal account of Defendant (#1985118) in the total amount of $153,605.39; and (5) the diversion of business from the Debtors, and deposits of checks made payable to Defendant into the personal account of Defendant (#1985118) in the total amount of $386,243.92.

These post-petition payments were transfers not authorized by this Court or the Bankruptcy Code. None of the transfers appear to have been made in the ordinary course of business, and

8

Defendant failed to prove the validity of the transfers. The transfers appear to be a fraudulent attempt by the Defendant to divert funds from the Debtors for the Defendant's own personal use or benefit. Due to the avoidance of the transfers that went into the Defendant's personal account, the payments that were made from the account will not also be avoidable. This Court finds that post-petition transfers totaling $550,651.19 may be avoided and recovered by the Plaintiff.

The Plaintiff seeks to avoid the operating agreements which were attached to Defendant's Proof of Claim. The operating agreements, dated April 8, 2002, purportedly give the Defendant secured interests in Debtors' equipment and accounts receivable. The original operating agreements have never been provided to the Plaintiff. Plaintiff stated at trial that there is no record of the operating agreements prior to the bankruptcy filing, and the Plaintiff believes that the operating agreements were fabricated.

Section 544(a)(1) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed." The parties stipulated that as of October 1, 2003, there were no perfected security interests recorded against the Debtors' accounts, contract rights, general intangibles and accounts receivable. It is also stipulated that the Defendant did not record any security interest or agreement terms between the Defendant and Debtors.

This Court questions the validity of the operating agreements. Evidence shows that the agreements were likely fabricated after the petition date. It is undisputed that there were no perfected security interests recorded against the Debtors' property as of the petition date. This Court finds that the security interests purportedly granted to Defendant under the operating agreements may be avoided by the Plaintiff.

9

The Plaintiff also seeks to avoid the transfers of (1) real property located in Bryan County from Debtor Sioux Aggregates to the Defendant in March, 2001; and (2) the Denison, TX sand pit property titled in the Defendant's name on which Debtors' funds were used to make the mortgage payments.

The Plaintiff may avoid fraudulent transfers pursuant to § 548, which provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
        (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
        (II) was engaged in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548.

The four elements required under § 548(a)(1) are: (1) that the debtor has an interest in property; (2) that the debtor has voluntarily or involuntarily transferred this interest; (3) that the transfer occurred on or within one year of the filing of the debtor's bankruptcy; and (4) that the transfer was made with the actual intent to hinder, delay, or defraud any entity which was a creditor of the debtor on or after the date of the transfer. *Kaler v. McLaren (In re McLaren),* 236 B.R. 882, 899 (Bankr. D.N.D. 1999) (citations omitted). The intent of the debtor is the focus of § 548(a)(1).

10

*Id.* Courts may infer fraudulent intent from the circumstances surrounding the transfer. *Id; see also Nordberg v. Republic Nat'l Bank of Miami (In re Chase & Sanborn Corp.),* 51 B.R. 739, 740 (Bankr. S.D. Fla. 1985). Courts have looked at the following factors or "badges of fraud":

> (1) the transfer was made to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer was concealed;
> (4) the debtor had been sued or threatened with suit prior to the occurrence of the transfer;
> (5) the transfer was of substantially all of the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed other assets;
> (8) the value of consideration received for the transfer was not reasonably equivalent to the value of the asset transferred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

*McLaren,* 236 B.R. at 899 (citing *Dionne v. Keating (In re XYZ Options, Inc.),* 154 F.3d 1262, 1272 (11th Cir. 1998); *Schieffler v. Beshears (In re Beshears),* 182 B.R. 235, 239 (Bankr. E.D. Ark. 1995)). The *McLaren* court further noted that the more common badges of fraud are:

> (1) actual or threatened litigation against the debtor;
> (2) purported transfer of all or substantially all of the debtor's property;
> (3) insolvency or other unmanageable indebtedness on the part of the debtor;
> (4) a special relationship between the debtor and the transferee; and
> (5) retention by the debtor of the property involved in the putative transfer.

*Id.* at 900 (citations omitted). Once the Trustee has established sufficient badges of fraud are present, she is entitled to a presumption of fraudulent intent. *Id.* (citations omitted). Thereafter, the burden shifts to the transferee to show some legitimate supervening purpose for the transfers. *Id.* (citations omitted).

"Where the transferee is in a position to dominate or control the debtor's disposition of his property, the transferee's intent to hinder, delay or defraud creditors may be imputed to the debtor."

11

Case 05-07114   Doc 86   Filed 01/11/07   Entered 01/11/07 09:27:16   Desc Main
Document      Page 11 of 15

*Pirrone v. Toboroff (In re Vaniman Int'l, Inc.)*, 22 B.R. 166, 183 (Bankr. E.D.N.Y. 1982) (citations omitted).

Alternatively, under § 544(b), the Trustee is provided with rights of an actual unsecured creditor. The Trustee may exercise the rights of the creditor under state fraudulent transfer law. 5 *Collier on Bankruptcy*, ¶ 544.09[2], p. 544-18 (Lawrence P. King ed., 15th ed. rev. 2006). Oklahoma has adopted the Uniform Fraudulent Transfer Act ("UFTA") which is codified at Okla. Stat. Ann. tit. 24, § 116 (West 1987). Section 116 provides:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> 1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> 2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
>> b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

In determining actual intent, factors to be considered are:

> 1. the transfer or obligation was to an insider.
> 2. the debtor retained possession or control of the property transferred after the transfer;
> 3. the transfer or obligation was disclosed or concealed;
> 4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> 5. the transfer was of substantially all the debtor's assets;
> 6. the debtor absconded;
> 7. the debtor removed or concealed assets;
> 8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> 9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> 10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Okla. Stat. Ann. tit. 24, § 116(B) (West 1987). The purpose of the UFTA is to invalidate a transfer of assets made by the debtor if the transfer has the effect of placing assets out of the reach of its present and future creditors. *Burrows v. Burrows,* 886 P.2d 984 (Okla. 1994). A debtor is insolvent if the sum of the debtor's debts is greater than all the debtor's assets determined at a fair value or if the debtor is generally not paying all of its debts as they are due. Okla. Stat. Ann. tit. 24, § 114(A) and (B) (West 1987).

Under UFTA via § 544 and § 548, the Court finds that transfers of the real property located in Bryan County from Debtor Sioux Aggregates to the Defendant in March, 2001, and the Denison, TX sand pit property titled in the Defendant's name were made with the actual intent to hinder, delay or defraud creditors. Defendant was an insider of the Debtor companies and the value of the consideration received by the Debtor companies was not reasonably equivalent to the value of the assets. The transfer of the Bryan County property and the mortgage payments made on the Denison sand pit consisted of a substantial portion of the Debtors' property, and occurred at a time when the Debtors were either insolvent or close to insolvency. The transfers placed the assets out of the reach of the Debtors' creditors. The Debtors made the mortgage payments on the Denison sand pit while operating on the property, paying for the sand retrieved from the property, and paying a salary to Defendant. The Court finds there are sufficient badges of fraud present to allow the Trustee a presumption of fraudulent intent. Therefore, the burden shifts to the Defendant to show some legitimate purpose. The Defendant offered no plausible explanation. The Court finds none. Thus, the Trustee may avoid the transfers of the properties.

The Plaintiff seeks to deny the Defendant's filed claims against the estate pursuant to

13

§ 502(d), which provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). Having found the above transfers avoidable, this Court finds that the Defendant's claims should be denied under § 502(d).

The Plaintiff seeks pre- and post-judgment interest on the amounts avoided and recovered. First, the Court will address the issue of post-judgment interest. Post-judgment interest is specifically provided for by statute. 28 U.S.C. § 1961. Post-judgment interest need not be specifically requested, but rather is mandated by federal statute. *Pereira v. Goldberger (In re Stephen Douglas Ltd.)*, 174 B.R. 16, 22 (Bankr. E.D.N.Y. 1994). Therefore, the Court finds that the Plaintiff is entitled to post-judgment interest.

Next, the Court will address whether the Plaintiff is entitled to pre-judgment interest. Pre-judgment interest is subject to judicial discretion. *In re Roco Corp.,* 37 B.r. 770 (D. R.I. 1984). Award of pre-judgment interest "is generally governed by the rationale that such interest enables the prevailing plaintiff to be made whole in absence of countervailing equities or statutory prohibition." *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.),* 135 B.R. 659, 665 (Bankr. D. Colo. 1991). In actions brought pursuant to §§ 547 and 548 of the Bankruptcy Code, pre-judgment interest is compensatory. *Id.* at 667. It compensates the estate for the debtor's use of those funds from the time they were withheld from the estate. *Id.* at 668 (citations omitted); see also *Osage Crude Oil Purchasing, Inc. v. Osage Oil & Transportation, Inc. (In re Osage Crude Oil Purchasing, Inc.),* 103 B.R. 256, 263 (Bankr. N.D. Okla. 1989). As a general rule on a voidable preference recovery,

14

interest, if allowed, is computed from the date of demand for its return or in the absence of a prior demand, from the date the action is commenced. *Roco Corp.* at 774 (citations omitted). This Court finds that pre-judgment interest should be allowed to compensate the estate, and should be computed from the date that the adversary action was commenced at the rate prescribed in 28 U.S.C. § 1961(a). *In re Neponset River Paper Co.,* 219 B.R. 918, 921 (Bankr. D. Mass. 1998).

IT IS THEREFORE ORDERED that relief is granted as follows:

The Plaintiff shall recover pre-petition transfers in the amount of $135,988.56.

The Plaintiff shall recover post-petition transfers in the amount of $550,651.19.

The security interests purportedly granted to Defendant under the Operating Agreements are avoided.

The transfers of the real property located in Bryan County and the Denison, TX sand pit are avoided.

The Plaintiff is awarded pre- and post-judgment interest on the amounts avoided and recovered.

The Defendant's proofs of claim filed in the Debtors' bankruptcy cases are denied under § 502(d).

###